**David W. BREDEMEIER,**
**Defendant-Appellant,**

**v.**

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1283A396.**

Court of Appeals of Indiana,
First District.

May 31, 1984.

William J. Marshall, Oakland City, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

David W. Bredemeier appeals his conviction by jury of theft.[1] We reverse and remand for a new trial.

## FACTS

On February 23, 1983, the home of Gerald Schleter was burglarized and several guns, some ammunition, and other articles of personal property were stolen. On March 3, 1983, Ron Miley was arrested for shoplifting. Miley confessed to the Schleter burglary and implicated Bredemeier. Miley entered into an agreement with the state whereby he would plead guilty to

theft and receive a two year sentence with all but six months suspended. Miley actually served three months in the Gibson County jail.

At trial, Miley was the key witness for the state in establishing the case against Bredemeier. He testified that Bredemeier drove him to Schleter's house and let him out. Bredemeier then went to his grandmother's house to do some laundry, returning later to pick up Miley and the stolen guns. According to Miley, it was Bredemeier's idea to get some guns, but it was Miley's idea to steal the guns from Schleter.

The facts of Miley's complicity on the crime were revealed to the jury, as well as other criminal activity on his part, and the jury was made aware of his "deal" with the state made to procure his testimony against Bredemeier. Counsel for Bredemeier sought to cross-examine Miley concerning his fear of sexual molestation by other inmates if he were sent to the Indiana Reformatory. The state's objection on the ground of immateriality was sustained thereby precluding this line of cross-examination.[2]

## ISSUES

Although Bredemeier raises other issues, we confine our opinion to the following issue which requires reversal:

Was it reversible error for the trial court to preclude Bredemeier from cross-examining Miley concerning his desire to avoid being sent to the Indiana Reformatory because of his fear of being sexually molested there?

## DISCUSSION AND DECISION

Generally, the scope of cross-examination rests within the discretion of the trial court, and we will reverse only for an

---

1. Indiana Code section 35–43–4–2 (1982). Bredemeier was charged with burglary and theft. He was acquitted on the burglary count.

2. The trial court permitted, by way of offer of proof, questioning, out of the jury's presence, of Miley which revealed he did not want to go to the Reformatory because he had heard that young boys (Miley was 19) were sexually molested there.

abuse of that discretion. *Davis v. State,* (1983) Ind., 456 N.E.2d 405; *McIntyre v. State,* (1984) Ind.App., 460 N.E.2d 162 (transfer pending). The trial court has broad discretion in determining the permissible scope of cross-examination to test the credibility of a witness. *Gaston v. State,* (1983) Ind.App., 451 N.E.2d 360, *trans. denied; McIntyre.* Actual infringement of the right of cross-examination must be shown in order to establish abuse of discretion by the trial court in regulating cross-examination in a criminal case. *Pfefferkorn v. State,* (1980) Ind.App., 413 N.E.2d 1088; *McIntyre.*

The regulation of cross-examination by the trial court, however, must be consistent with due process. *Higginbotham v. State,* (1981) Ind.App., 427 N.E.2d 896; *Haeger v. State,* (1979) 181 Ind.App. 5, 390 N.E.2d 239; *McIntyre.* A fair trial requires that the defendant be granted full, adequate, and effective cross-examination of the state's witnesses. *McIntyre; Higginbotham; Haeger.* Any doubt concerning the legitimacy of such cross-examination must be resolved in favor of the questioner. *Sears v. State,* (1972) 258 Ind. 561, 282 N.E.2d 807; *McIntyre; Higginbotham,* and this is especially true where the witness is an accomplice who has turned state's witness. *Williams v. State,* (1981) Ind., 426 N.E.2d 662; *People v. Baker,* (1959) 16 Ill.2d 364, 158 N.E.2d 1; *Bushnell v. State,* (1979) 95 Nev. 570, 599 P.2d 1038. In *Williams,* our supreme court said that "[s]uch cross-examination should be full and wide-ranging as it bears heavily upon the weight to be accorded incriminating testimony. *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684." 426 N.E.2d at 668. The Supreme Court of Illinois in *Baker* declared that great latitude should be permitted in the cross-examination of an accomplice, and that a defendant properly may inquire into any motives that may have influenced an accomplice to become a prosecution witness. 158 N.E.2d at 5. Cases cited by the Supreme Court of Nevada in *Bushnell* establish the general rule that "[t]he bounds of the trial court's discretion are limited too by the well-founded

rule that the widest latitude be given a defendant in cross-examining an accomplice as to his motives for testifying." 95 Nev. at 572, 599 P.2d at 1040. *See also* 81 Am.Jur.2d *Witnesses* §§ 498, 560 (1976).

The *Newman* case cited by our supreme court in *Williams* in support of its statement that full and wide-ranging cross-examination of an accomplice must be permitted, nevertheless recognized that an accomplice who turns "state's evidence" in consideration of some favor from the state, "to be realistic, is being bribed", although such action is approved in the interest of effective law enforcement. *Newman,* 263 Ind. at 572, 334 N.E.2d at 686. It does not necessarily follow that the accomplice's testimony is false. "It is, however, highly suspect." 263 Ind. at 572, 334 N.E.2d at 687. Indeed it is clearly established law that a conviction may be based upon the uncorroborated testimony of an accomplice *Newman.* However, because of the shadow cast upon such testimony by its inducement by favors from the state, full cross-examination as to the accomplice's motivation in so testifying must be permitted.

Our courts have recognized the fact that a witness had a motive to exaggerate or falsify testimony would be material in determining the credibility of that witness. *Denton v. State,* (1983) Ind., 455 N.E.2d 905; *Hossman v. State,* (1984) Ind.App., 460 N.E.2d 975; *Shanholt v. State,* (1983) Ind.App., 448 N.E.2d 308, *trans. denied.* In *Hossman,* this court declared that evidence of a witness's ulterior motive can be excluded only if it is too attenuated to be reasonably probable. "The bias and ulterior motives of a witness may be revealed so long as there is a reasonable degree of probability that the witness is biased because of the evidence in question." *Hossman,* 460 N.E.2d at 977.

In *Newman,* our supreme court declared that the jury must be apprised of the state's bargain with the accomplice turned state's evidence in order to evaluate his testimony and judge his credibility. The Supreme Court of the United States has

held it was reversible error to refuse to allow the defendant to cross-examine the prosecution's key witness to show he was on probation following an adjudication of juvenile delinquency for burglary because such cross-examination might show that the witness was attempting to shift suspicion away from himself. *Davis v. Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. Most recently, in *McIntyre,* we found reversible error where the trial court refused to allow cross-examination of the victim of the crime, whose testimony was essential, to show she had agreed to testify only after being threatened with punishment for contempt for her prior refusal to testify. These cases all are predicated upon the general rule that broad cross-examination must be permitted to show any possible ulterior motive for giving the proffered testimony.[3]

The case which most closely parallels this case is *Bushnell.* There, an accomplice who previously had been incarcerated in Texas and badly treated in the Texas prison, turned prosecution witness because of his fears of what would happen to him if he were returned to Texas for parole violation. The Supreme Court of Nevada, although finding the error harmless because of the overwhelming evidence of guilt,[4] stated:

"In the case at bar, appellant, in cross-examining his accomplice Sloan, attempted to elicit the facts that Sloan was on parole in Texas, that he harbored tremendous fears of returning there as well as hopes that the Nevada authorities might not compel his return if he testified favorably for the prosecution against appellant. This was neither repetitive, irrelevant, vague, speculative, nor designed to harass, annoy or humiliate, but

was clearly proper inquiry on cross-examination of an accomplice to show bias .... It was error to restrict appellant's cross-examination of Sloan to actual promises made by the prosecution."

95 Nev. at 573, 599 P.2d at 1040.

Unlike *Bushnell,* the evidence of guilt here, but for the testimony of Miley, is not overwhelming. Miley was the key witness for the prosecution, and his credibility is essential to the state's case. True, his credibility was impugned by his complicity in the instant case and his prior criminal history. Nevertheless, the jury could have concluded that his fear of being sent to the reformatory because of the possibility of being sexually abused, motivated him to testify to the state of facts which the prosecution needed to establish in order to take advantage of an agreement which would allow him to serve his time in the county jail thereby avoiding any possibility of incarceration at the dreaded reformatory.

As we pointed out in *McIntyre,* the jury may not have been persuaded that Miley's fear of the reformatory was so strong as to cause him to give perjured testimony to escape that consequence. However, the point is, Bredemeier had a right to pursue this line of cross-examination to show a possible ulterior motive for Miley's testimony. The Supreme Court of the United States in *Davis* said:

"We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that *the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment* as to weight to

---

**3.** *See State v. Roberts,* (1980) 25 Wash.App. 830, 611 P.2d 1297, a rape case where the fact of intercourse was undisputed and the controverted issue was consent. Defendant was not permitted to pursue the theory that the prosecuting witness's testimony was motivated by parental compulsion to cooperate with the prosecuting attorney. Held, reversible error as a denial of defendant's right to effective cross-examination.

*See also State v. Hunter,* (1976) Mo.App., 544 S.W.2d 58, where, in a prosecution for forgery, it was held prejudicial error to refuse to permit the defendant to cross-examine the bank teller who identified defendant as to her fear she might lose her job as an incentive for making the identification.

**4.** *But see* the dissenting opinion of Justice Manoukin.

place on [the witness's] testimony which provided 'a crucial link in the proof ... of petitioner's act.' [Citation omitted, emphasis supplied.]"

415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354.

The denial of the right to cross-examine Miley concerning his fear of the reformatory infringed upon Bredemeier's right of cross-examination, and was an abuse of discretion requiring reversal for a new trial.

Judgment reversed and cause remanded for a new trial.

NEAL, P.J., and ROBERTSON, J., concur.