## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2020, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony J. Castleman, | July 9, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-2632 |
| v. | Appeal from the Adams Superior Court |
| State of Indiana, | The Honorable Patrick R. Miller, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 01D01-1907-F6-168 |

**Baker, Judge.**

[1] Anthony Castleman appeals his convictions for Class A Misdemeanor Conversion[1] and Class A Misdemeanor Criminal Mischief,[2] arguing that (1) his two convictions violate Indiana's prohibition against double jeopardy; (2) the trial court erred when it denied his motion for a mistrial; and (3) the evidence was insufficient to support the convictions. Finding no double jeopardy violation, no error, and the evidence sufficient, we affirm.

## Facts

[2] Sometime in the late evening of June 20 or the early morning of June 21, 2019, Enos Gore was driving in his white truck with his friend, Castleman, in the passenger's seat. The truck stalled on a country road that had been flooded with high waters. At 6 a.m. on the morning of June 21, 2019, Susie Brown was on her front porch when she observed a man in a black shirt splashing around in the high flood waters in front of her property. According to Brown, the man appeared to be "washing his pants," tr. vol. II p. 141, and proceeded to walk onto her property. Brown became nervous as the man approached her house, but the man turned to walk onto the farm of her neighbor, Merlie Eicher. Brown stopped being concerned and went inside.

[3] Later, Brown heard Eicher's tractor start up, so she went back onto her porch. She looked out and saw the same man in the black shirt driving the tractor into

---

[1] Ind. Code § 35-43-4-3(a).

[2] I.C. § 35-43-1-2(a)(1).

the high flood waters, where it stalled and became almost completely submerged. The man crawled out through the tractor's back window and walked over to the passenger-side window of the stalled white truck.

[4] Approximately fifteen minutes later, police arrived, at which point Brown observed the man in a black shirt, later identified as Castleman, and another man in a gray shirt, later identified as Gore, walk towards the officers. Lieutenant Dean Amstutz, who was on the scene, noticed that Castleman was soaked from the torso down. He also noticed a strong smell of alcohol on Castleman's breath. Lieutenant Amstutz offered to give Castleman a ride to a nearby apartment, during which time Castleman broke down in tears and "start[ed] to talk to himself about how he's in so much trouble." *Id.* at 172.

[5] Sometime later that day, Eicher returned home and discovered his tractor destroyed and submerged in water. He eventually called law enforcement. Eicher told Brown's husband about what had had happened, which prompted Brown's husband to tell Brown. Law enforcement decided to speak with Brown because she had witnessed the events from that morning, and the officers eventually obtained written statements from both Brown and Eicher.

[6] On July 3, 2019, the State charged Castleman with Level 6 felony theft and Class A misdemeanor criminal mischief. Before his trial, Castleman filed a motion in limine, which the trial court granted, that precluded Brown from identifying Castleman as the person she had witnessed driving the tractor.

During Castleman's September 16, 2019, jury trial, Castleman's counsel asked Corporal Patrick Piper of the Adams County Sheriff's Office why law enforcement did not request additional evidence from the crime scene. In response, Corporal Piper said, "the witness statement from [Brown] identified the male subject wearing a black shirt the morning prior. He was identified as . . . Anthony Castleman." *Id.* at 212. Castleman's counsel objected, arguing that Corporal Piper violated the order in limine.

Then, while outside the jury's presence, Castleman's counsel moved for a mistrial, contending that Corporal Piper's comment unduly prejudiced Castleman, even though it was Castleman's counsel who asked the question. The trial court concluded that "it's not a direct violation of the motion in limine because the motion in limine was directed directly at [Brown]." *Id.* at 215 (emphases omitted). Ultimately, the trial court denied Castleman's motion, but to ameliorate any prejudicial effect, went on to admonish the jury as follows:

> Ladies and gentlemen of the jury, before we call the next witness, the last witness who testified, Officer Piper, in his testimony made a statement that they, basically the law enforcement didn't do further investigation to this because [Brown] had identified [Castleman] as their suspect. I will point that out to you that that is not accurate. That was not testified to by [Brown]. She never made a witness identification in this courtroom of anyone. She simply described an individual she saw and you are to understand that that's the limits of her testimony at this point [sic] time. Regardless of what Officer Piper may have stated in that statement.

*Id.* at 216 (emphases omitted).

At the conclusion of trial, the jury found Castleman guilty of the lesser-included offense of Class A misdemeanor conversion and Class A misdemeanor criminal mischief. On October 9, 2019, the trial court sentenced Castleman to concurrent terms of 300 days in the county jail. Castleman now appeals.

# Discussion and Decision

## I. Double Jeopardy

First, Castleman argues that his two Class A misdemeanor convictions violate Indiana's prohibition against double jeopardy. *See generally* Ind. Const. art. 1 § 14. We review questions of double jeopardy de novo, giving no consideration to the trial court's decision below. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

More specifically, Castleman argues that there is a reasonable probability that the jury relied on the same facts to convict him of both conversion and criminal mischief. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). Under this "actual evidence" test, Castleman must show that there is "a reasonable probability that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). There is no double jeopardy violation when the evidentiary facts establishing the essential elements of one offense satisfy many, but not all, of the essential elements of the second offense. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013).

[12] To convict Castleman of Class A misdemeanor conversion, the State was required to prove beyond a reasonable doubt that Castleman knowingly or intentionally exerted unauthorized control over the property of another person. I.C. § 35-43-4-3(a). To convict Castleman of Class A misdemeanor criminal mischief, the State was required to prove beyond a reasonable doubt that Castleman recklessly, knowingly, or intentionally damaged or defaced another person's property without that person's consent and that the pecuniary loss is between $750 and $50,000. I.C. § 35-43-1-2(a)(1).

[13] Based on the record, the evidentiary facts that the jury probably used to establish that Castleman had committed conversion were that he knowingly or intentionally entered Eicher's property and started using the tractor without Eicher's authorization or consent. Then, the evidentiary facts that the jury probably used to establish that Castleman had committed criminal mischief were that Castleman, without Eicher's consent, drove off in the tractor and plunged it into deep flood waters, where it became submerged and severely damaged; it is also undisputed that Eicher's tractor was valued at approximately $28,000 before it was damaged.

[14] Accordingly, Castleman cannot show that there was a reasonable probability that the jury relied on the same evidentiary facts to establish the essential elements of both offenses. Rather, the record shows that Castleman committed two separate acts—unauthorized control of the tractor and unauthorized operation/destruction of the tractor—during this timeframe. Therefore, because the evidentiary facts establishing the essential elements of one offense establish

the essential elements of some, but not all, of the second offense, there is no double jeopardy violation.

## II. Mistrial

Next, Castleman argues that the trial court erred when it denied his motion for a mistrial after admitting testimony that potentially prejudiced the jury, despite the trial court's admonishment.

A mistrial is an "extreme remedy" that should be used only when no other curative measure will rectify the situation. *Moore v. State*, 652 N.E.2d 53, 57 (Ind. 1995). Upon review of a denial of a motion for a mistrial, the defendant must demonstrate that the conduct complained of was both in error and had a probable persuasive effect on the jury's decision. *Pierce v. State*, 761 N.E.2d 821, 825 (Ind. 2002). More specifically:

> [W]hen the trial court admonishes the jury to disregard the inadmissible evidence, the prejudicial impact of the evidence may be sufficiently mitigated. The question of whether a defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion.

*Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003) (internal citations omitted). The decision to grant or deny a mistrial is within the sound discretion of the trial court, and we will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Hall v. State*, 722 N.E.2d 1280, 1282 (Ind. Ct. App. 2000).

[17] Specifically, Castleman contends that Corporal Piper violated the order in limine and sufficiently prejudiced his case when Corporal Piper said, "the witness statement from [Brown] identified the male subject wearing a black shirt the morning prior. He was identified as . . . Anthony Castleman." Tr. Vol. II p. 212.

[18] We find Castleman's argument to be unavailing. First, it should be noted that the trial court did not find that Corporal Piper's testimony violated the order in limine because the order in limine was directed at Brown herself and specifically prohibited only Brown from identifying Castleman. We agree with the trial court's assessment. By speaking about a different witness, Corporal Piper did not violate the narrow confines of the order in limine.

[19] Secondly, even if Corporal Piper's testimony violated the order in limine, the trial court stepped in to rectify the situation by admonishing the jury to disregard any testimony by Corporal Piper in which he referenced Brown's direct identification of Castleman as the man driving the tractor. An admonishment such as this, we believe, was thorough and effective enough to diminish any prejudicial effect that Corporal Piper's testimony may have had.

[20] Finally, it bears repeating that a mistrial is an "extreme remedy" that should be used only when other curative measures cannot rectify a situation. *Moore*, 652 N.E.2d at 57. Nothing in the record indicates that Corporal Piper's testimony placed Castleman in grave peril. Given that there were other curative measures implemented by the trial court, a mistrial would not have been warranted in this

situation. Therefore, we conclude that the trial court did not err when it denied Castleman's motion for a mistrial.

# III. Sufficiency of Evidence

[21] Finally, Castleman argues that the evidence was insufficient to support his two Class A misdemeanor convictions. When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[22] As we have already stated, to convict Castleman of Class A misdemeanor conversion, the State was required to prove beyond a reasonable doubt that Castleman knowingly or intentionally exerted unauthorized control over the property of another person. I.C. § 35-43-4-3(a). To convict Castleman of Class A misdemeanor criminal mischief, the State was required to prove beyond a reasonable doubt that Castleman recklessly, knowingly, or intentionally damaged or defaced another person's property without that person's consent and that the pecuniary loss is between $750 and $50,000. I.C. § 35-43-1-2(a)(1).

[23] The only piece of evidence Castleman claims is insufficient is the identification of him as the person who committed those crimes. More to the point, he argues

that "the State had to present substantial evidence of a probative value from which the jury could infer that he was the man who drove Eicher's tractor into the flood waters," but failed to do so. Appellant's Br. p. 14-15.

[24] There were only two people in the white truck on the night/morning of the incident: Castleman and Gore. While Brown could not and did not directly identify Castleman as the one who stumbled across her yard, entered Eicher's property, took off on Eicher's tractor, and then damaged that tractor in the high flood waters, she did describe the individual as someone wearing a black shirt. Castleman was wearing a black shirt, and we know that Gore was wearing a gray shirt. Plus, Lieutenant Amstutz, who was an officer on the scene, observed that Castleman was wearing a black shirt and was soaked from the torso down. Earlier that morning, Brown noticed a man leaving the white truck and washing his pants in the high waters. Further, while transporting Castleman to a nearby apartment, Lieutenant Amstutz witnessed Castleman crying and stating that "he's in so much trouble." Tr. Vol. II p. 172.

[25] A reasonable factfinder could have inferred from this evidence that it was Castleman who left the white truck, became soaked from the water, and committed the two crimes. Thus, the evidence is sufficient.

[26] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.